## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| MANISH MEHTA and DEEPA MEHTA,<br><br>Plaintiffs,<br><br>v.<br><br>STARWOOD HOTELS & RESORTS, LLC, d/b/a WESTIN LOS CABOS RESORT VILLAS & SPA, MARRIOTT INTERNATIONAL, INC. d/b/a WESTIN LOS CABOS RESORT VILLAS & SPA, and MARRIOTT VACATIONS WORLDWIDE CORPORATION,<br><br>Defendants. | No. 21-cv-01591<br><br>Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

In November 2017, Illinois residents Manish and Deepa Mehta vacationed at Westin Los Cabos Resort Villas & Spa in Los Cabos, Mexico. (Dkt. 1-1 ¶¶ 10–11.) While there, Mr. Mehta received a massage at the Resort's spa, from which he allegedly suffered a bilateral vertebral artery dissection that led to a brain stem stroke. (*Id.* ¶¶ 14–16.) In November 2019, Manish and Deepa Mehta sued Starwood Hotels & Resorts Worldwide, LLC, Marriott International, Inc., and Vistana Signature Experiences, Inc. in the Circuit Court of Cook County, Illinois. (Dkt. 1 ¶ 1.) Vistana is no longer a party to the case (*Id.* ¶ 23 n.1), and in February 2021, Plaintiffs filed an amended complaint, adding Marriott Vacations Worldwide Corporation

("MVWC") as a Defendant, (*Id.* ¶ 3). Mr. Mehta alleges negligence against each Defendant and Deepa Mehta alleges a loss of consortium. (*Id.* ¶ 2.)

Defendants removed the case to this Court under 28 U.S.C. § 1332(a)(1). (*Id.* ¶ 6.) Defendants move to dismiss, alleging that the Court lacks personal jurisdiction over Defendants under Rule 12(b)(2); the claim against MVWC is time-barred under Rule 12(b)(6); and Mexico, rather than Illinois, is the proper forum. (Dkt. 10 at 1.)

Defendants' motion to dismiss is granted based on the Court's lack of personal jurisdiction over Defendants. In addition, because Plaintiffs added MVWC after the statute of limitations had expired and the Second Amended Complaint does not relate back to the original Complaint, Plaintiffs' claim against MVWC must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

Plaintiffs Manish and Deepa Mehta are a married couple and residents of Cook County, Illinois. (Dkt. 1-1 ¶¶ 1–3.) In June 2017, Mr. Mehta received an email from Marriott advertising a four-night stay at the Resort, and he booked a trip for November. (*Id.* ¶¶ 10–11.) That November, Plaintiffs arrived at the Resort, where employees wearing Westin uniforms greeted them. (*Id.* ¶¶ 11, 13.) On November 14, 2017, Mr. Mehta received a massage from a masseuse at the Resort, who wore the customary uniform for the Resort's employees. (*Id.* ¶¶ 13–14.) Shortly after, Mr. Mehta contends he began to feel pain. (*Id.* ¶ 15.) A week later, Plaintiffs took a direct flight to Chicago and, promptly upon arrival, went to Northwestern Medical Center. (*Id.* ¶ 16.) At the hospital, the doctors diagnosed Mr. Mehta with having suffered a

bilateral vertebral artery dissection that caused a brain stem stroke. (*Id.*)

Although the Resort carried Westin's name, Vistana Signature Experiences is the apparent owner of the Resort. (Dkt. 15-2, Exhs. A–C.) Starwood, a subsidiary of Marriott, licensed the use of Westin trademarks to Vistana, and neither Marriott nor Starwood owns or operates the Resort. (*Id.*) The only member of Starwood, an LLC, is Mars Merger Sub, LLC, whose only member is in turn Marriott. (Dkt. 10-1 ¶ 3.) Marriott is a publicly held company, and as of March 23, 2021, no other publicly held company owns more than 5% of Marriott. (*Id.* ¶ 2.) MVWC is a publicly held company, and as of March 15, 2021, Blackrock, Inc. was the only publicly held company that owned more than 5% of MVWC stock. (*Id.* ¶ 1.)

On November 12, 2019, Manish and Deepa Mehta filed a complaint against Starwood d/b/a Westin Los Cabos Resort Villas & Spa, Vistana, Marriott, and Starwood. (Dkt. 10 ¶ 2.) Vistana and Plaintiffs settled. (Dkt. 15 at 2.) On February 25, 2021,[1] Plaintiffs added MVWC as a Defendant in their Second Amended Complaint. (*Id.*) In the Second Amended Complaint, Mr. Mehta alleges three counts of negligence—one count against each Defendant—and Mrs. Mehta alleges one count of loss of consortium against all Defendants (Dkt. 1 ¶¶ 2–3.)

Defendants removed the case to this Court based on diversity jurisdiction (*see* Dkt. 1; Dkt. 10 ¶ 4) and then filed a motion to dismiss (Dkt. 10 at 4). Defendants urge the Court to dismiss the lawsuit on three grounds: (1) under Rule 12(b)(2) of the

---

[1] Plaintiffs contend in the complaint that they added MVWC as a defendant on February 25, 2021. (Dkt. 15 at 2.) Defendants assert that Plaintiffs added MVWC on February 23, 2021. (Dkt. 11 at 12.) At this point in the litigation, the Court takes all facts alleged in Plaintiffs' complaint as true.

Federal Rules of Civil Procedure because the Court lacks personal jurisdiction over all Defendants (*Id.* ¶ 6); (2) under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the claim against MVWC is time-barred (*Id.* ¶ 9); and (3) based on the doctrine of *forum non conveniens*, as the case should be litigated in Mexico (*Id.* ¶ 10).

## II.  LEGAL STANDARD

A motion under Rule 12(b)(2) tests the federal court's authority to exercise personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2); *see also uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Whether a federal court in Illinois has personal jurisdiction "is determined under Illinois' long-arm statute, which authorizes jurisdiction to the full extent permitted by the United States Constitution." *Tamburo v. Dworkin*, 601 F.3d 693, 697 (7th Cir. 2010). The United States Constitution permits jurisdiction if it would be "fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (emphasis in original).

Exercising personal jurisdiction is fair if the court has either general or specific jurisdiction over the defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). A court has general jurisdiction over a defendant if the defendant has enough contacts with the state such that he or she is essentially "at home" in the state. *Id.* A court has specific jurisdiction over a defendant if the suit " 'arise[s] out of' the defendant's contacts with the forum." *NBA*

*Properties, Inc. v. HANWJH*, 46 F.4th 614, 618 (7th Cir. 2022).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678–79, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiffs' favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Because the statute of limitations is an affirmative defense, it is not ordinarily resolved on a motion to dismiss. *The Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations."). But it may be raised in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). To determine if the applicable statute of limitations has expired for a state law claim, the court applies the state's law "regarding the statute of limitations and any rules

5

that are an integral part of statute of limitations, such as tolling and equitable estoppel." *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).

## III. DISCUSSION

### A. The Court Lacks Personal Jurisdiction over the Defendants

Federal courts in Illinois may exercise personal jurisdiction over a defendant to the extent authorized by the Illinois long-arm statute. *uBID*, 623 F.3d at 425; *see also* Fed. R. Civ. P. 4(k)(1)(A). That statute authorizes the exercise of personal jurisdiction "to the full extent permitted by the United States Constitution." *Tamburo*, 601 F.3d at 697 (citing 735 ILCS 5/2-209(c)). In Illinois, the Fourteenth Amendment limits the exercise of personal jurisdiction. *See uBID*, 623 F.3d at 425. The Court may assert personal jurisdiction either through specific or general jurisdiction. *See Advanced Tactical*, 751 F.3d at 800. The parties focused on specific jurisdiction, so the Court will first address this issue before turning to general jurisdiction.

first.

### 1. The Court Lacks Specific Jurisdiction

There are three requirements for a court to exercise specific jurisdiction over a defendant. First, the defendant must have "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state." *Tamburo*, 601 F.3d at 702. Second, "the alleged injury [must have arisen] out of the defendant's forum-related activities." *Id.* And third, "[t]he exercise of specific personal jurisdiction must . . . comport with traditional notions of fair play

and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Id.*

### i. *Purposeful Availment*

The purposeful availment requirement " 'ensure[s] that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state.' " *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (internal quotation marks omitted)). Hence, Defendants' act conferring jurisdiction must therefore be related to the facts that give rise to the suit and "create a substantial connection with the forum State," and Defendants must be responsible for the relationship between themselves and the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Internet transactions challenge the traditional bounds of specific jurisdiction by, in some cases, permitting a court to exercise its jurisdiction over a defendant even if that defendant was not physically present in the forum state. *See*, *e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). For example, online communications "in furtherance of an allegedly fraudulent scheme can create jurisdictional contacts just like 'mailed letters' and 'phone calls.' " *Greene v. Karpeles*, 2019 WL 1125796, at *8 (N.D. Ill. Mar. 12, 2019) (quoting *Felland v. Clifton*, 682 F.3d 665, 676 n.3 (7th Cir. 2012)). So long as an actor's efforts are " 'purposefully directed' toward residents of another State," physical presence is not required. *Rudzewicz*, 471 U.S. at 476 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1985)).

In the Seventh Circuit, the test for specific personal jurisdiction in cases

arising from websites and electronic communications requires a courts to assess whether a defendant " 'purposefully exploited the . . . market' beyond simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there." *Advanced Tactical*, 751 F.3d at 802 (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011)); *see HANWJH*, 46 F.4th at 621. A company's act of "maintain[ing] an email list to . . . shower . . . subscribers with company-related emails does not show a relation between the company" and the state in which the email was received sufficient to establish specific jurisdiction. *Advanced Tactical*, 751 F.3d at 803. Moreover, "[t]he interactivity of a website is . . . a poor proxy for adequate in-state contacts" because if an interactive website sufficed to establish contacts, "there [would be] no limiting principle—a plaintiff could sue everywhere." *Id.*

Defendants contend that the Court lacks specific jurisdiction because Defendants did not purposefully direct activities towards Illinois. (Dkt. 11 at 9.) Mr. Mehta made his trip reservation on Defendants' website while in Illinois, but Defendants contend that alone does not create a sufficient connection between Defendants and Illinois to confer specific jurisdiction. (*Id.* at 8–9.)

Defendants rely on two out-of-circuit cases for support. (*Id.* at 9–10); *see Fidrych v. Marriott International, Inc.*, 952 F.3d 124, 139–40 (4th Cir. 2020) (defendant's operation of a website that was accessible in South Carolina did not, by itself, create the minimum contacts necessary to fairly subject the website's operator to South Carolina's jurisdiction); *see Buckley v. Sheraton Overseas Mgmt. Corp.*, 2010

8

WL 2025272, at *3 (E.D. Mo. May 20, 2010) (holding that the defendant's act of advertising in Missouri for a hotel in a different state, along with operating a website that was accessible in Missouri, did not create enough contacts to establish specific jurisdiction in Missouri).

Defendants, pointing to the Seventh Circuit's decision in *Advanced Tactical*, further argue that sending emails to Plaintiffs failed to constitute purposeful availment because Mr. Mehta affirmatively subscribed to Defendants' email list. (Dkt. 16 at 7 (citing *Advanced Tactical*, 751 F.3d at 803).) And because Mr. Mehta signed up to receive the emails, Defendants contend, he is the sole cause of the connection between Defendants and Illinois. (Dkt. 16 at 7); *see Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *see Switchboard Apparatus, Inc. v. Wolfram*, 2022 WL 1591732, at *7 (N.D. Ill. May 19, 2022) (cleaned up) ("[I]t is the defendant—not the plaintiff or third parties—that must create the contacts in the forum state, and those contacts must be with the forum State itself, not . . . with persons who reside there.").

Plaintiffs contend that Defendants' website lacked the required passivity to evade personal jurisdiction. (Dkt. 15 at 5.) Rather, Defendants sent numerous emails advertising the Resort to Plaintiffs. (*Id.*) As a result of those emails, Plaintiffs decided to stay at the Resort. (*Id.*) By sending the emails, then, Defendants purposefully directed their actions toward Illinois and, consequently, are subject to the court's specific personal jurisdiction. (*Id.* at 4.)

Defendants' act of sending multiple emails that incidentally included Mr.

Mehta (due to his having affirmatively signed up to receive them) fails to meet the bar for purposeful availment. Decisions from other courts support this holding. For example, in *Potter v. Marriott International, Inc.*, the plaintiff reserved a hotel room in Marrakesh, Morocco, through Marriott's website. (Dkt. 11-3, Ex. C (citing 20-cv-04008, at *2 (N.D. Ill. Nov. 24, 2020).) While at the hotel in Morocco, the plaintiff allegedly suffered an injury and sued in the Northern District of Illinois. *Id.* As the court explained, Marriott's activity of operating a website in Illinois was not purposefully directed toward Illinois because it did not "target[] Illinois residents more than residents of any other state." *Id.* at *7. Indeed, the Court noted that a contrary finding in the plaintiff's favor would undermine the limitations imposed by specific jurisdiction. *Id.* at *7–8; *see Advanced Tactical*, 751 F.3d at 801–02 (operation of an interactive website alone cannot confer specific jurisdiction over a defendant because doing so would create "*de facto* universal jurisdiction" that runs contrary to Supreme Court precedent); *My Own Meals, Inc. v. PurFoods, LLC*, 2022 WL 2132729, at *3 (June 14, 2022) (defendant's act of sending two cease-and-desist letters to plaintiff—the need for which arose due to the plaintiff's actions—was insufficient to establish minimum contacts and that the exercise of jurisdiction would violate norms of federalism and fairness).

*Felland v. Clifton* also helps illustrate why specific jurisdiction is inappropriate here. 682 F.3d 665 (7th Cir. 2012). In *Felland*, the plaintiffs, a Wisconsin couple, entered a contract with the defendant, an Arizona real estate developer, to purchase a condominium in Mexico. *Id.* at 669. The defendant sent two letters, twenty-two

emails, and made several phone calls to reassure the couple that the project would be completed in a timely manner. *Id.* Because the defendant failed to complete the unit by the promised date, the couple alleged that they were defrauded. *Id.* As the Seventh Circuit explained, the defendant knew the Wisconsin residents would be defrauded in Wisconsin and "engaged in an ongoing fraudulent scheme that included several letters, multiple phone calls, and almost two dozen emails, all to the [plaintiffs'] home in Wisconsin"—thus personally availing himself of Wisconsin in his efforts. *Id.* at 675–77, 679.

Comparing the present case to *Potter* and contrasting it with *Felland* shows that Defendants did not purposefully avail themselves of the forum of Illinois. As in *Potter*, Defendants' online advertising did not target any state—nor did they target Plaintiffs directly. The emails Defendants sent to Plaintiffs made clear that the emails were automated communications to subscribers of Defendants' email list.[2] One email contained the sentence: "You are subscribed as MKMEHTA1@GMAIL.COM."

---

[2] In determining whether personal jurisdiction exists, the Court takes note of the emails attached and referred to in the Complaint, attached by Plaintiffs in their Response to Defendants' Motion to Dismiss, and subsequently used by both Defendants and Plaintiffs. Plaintiffs attached various emails and advertisements to the operative complaint and reproduced the full version of some of those emails and advertisements in their Response to Defendants' Motion to Dismiss. (Dkt.1-1, Exhs. A–C; Dkt. 15-2, Exhs. A–D.) Plaintiffs' references to Defendants' advertising and emails are central to Plaintiffs' claims in their operative complaint and Response. (Dkt. 1-1, ¶¶ 10, 38, 66; *see* Dkt. 15-1 ¶¶ 5–6, 9, 17; Dkt. 15-2 ¶¶ 4–6, 8.) In deciding a motion to dismiss, the Court "may consider documents attached to or referenced in the pleading if they are central to the claim." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012); *see also Olson v. Bemis Co.*, 800 F.3d 296, 305 (7th Cir. 2015) (affirming a district court's decision to review documents attached to a motion to dismiss despite the plaintiff specifically objecting to their review because those documents are central to the complaint); *Osundairo v. Geragos*, 447 F.Supp.3d 727, 734 (N.D. Ill. 2020) ("In assessing whether Plaintiffs have met their burden [of making a *prima facie* showing of personal jurisdiction, the] Court may consider affidavits and exhibits from both parties.").

(Dkt. 15-2, Ex. A.) Another read: "Please do not reply directly to this system-generated e-mail." (*Id.*, Exhs. A, C.) And yet another included the following: "Please do not reply to this message. Unsubscribe from further marketing email communications related to this stay." (*Id.*, Ex. D.) By subscribing to Defendants' email list, Mr. Mehta thus created the link between Defendants and Illinois.

Defendants' actions here can be contrasted with those of the defendants in *Felland*. Those defendants made phone calls to the plaintiffs, sent twenty-two emails to them, and mailed physical letters to plaintiffs' Wisconsin address, but Defendants here only sent a few generic emails to their subscribers. Indeed, the record contains only one email from Westin advertising the hotel stay (although it includes others from Westin after the Mehtas booked the stay). (*Id.*, Ex. A.) In addition, unlike in *HANWJH*, Defendants did not "avail[] [themselves] of the Illinois market in offering and shipping a product to the forum." 46 F.4th at 627. The infrequent and impersonal contacts of Defendants, not specifically targeting Illinois, fail to meet the standard for purposeful availment as articulated by the Seventh Circuit.

####     ii.    *Arise From or Relate To*

Although Plaintiffs have failed to demonstrate purposeful availment, this opinion also considers the other prongs relating to specific personal jurisdiction. For specific jurisdiction to exist, the incident in question must also "arise from" or "relate to" the defendant's contacts with the forum state. *Walden*, 571 U.S. at 284; *Tamburo*, 601 F.3d at 708. As the Supreme Court has explained, "arise out of or relate to" does not require strict causation. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592

U.S. 351, 362 (2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. Some relationships will support jurisdiction without a causal showing."). But just because specific jurisdiction does not require strict causation does not mean that the arise-from-or-relate-to standard is limitless. *Id.* ("In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits."). Exercising specific jurisdiction has its limits because "*de facto* universal jurisdiction runs counter to the approach the Court has followed" for decades. *Advanced Tactical*, 751 F.3d at 801–02.

Relevant here, the limits of specific jurisdiction in the online communications context explain that "[t]he connection between the place where an email is opened and a lawsuit is entirely fortuitous." *Id.* at 803. Simply sending an email, then, does not create sufficient contacts between the defendant and the forum state such that an incident can be said to arise from or relate to the contacts.

Defendants argue that Plaintiffs' single act of reserving their stay on Marriott's and Starwood's website while in Illinois does not give this Court specific jurisdiction over Defendants. (Dkt. 11 at 11–12.) Defendants contend that operating a website advertising a resort does not give rise, or sufficiently relate, to an injury that later occurs at that resort. (*Id.* at 11–12.)

In support, Defendants refer to *Fidrych*, in which the court held that a service that facilitates the making of hotel reservations does not create personal jurisdiction over that service. 952 F.3d at 142. Although the Fourth Circuit acknowledged that Marriott International conducted substantial business in South Carolina, it

determined that the plaintiff's injury at a Marriott-affiliated hotel in Milan did not arise from or relate to Marriott's business in South Carolina. *Id.* at 139. And though Marriott operated a website accessible to residents in South Carolina, the court found that the operation of a website does not create sufficient minimum contacts for the purposes of personal jurisdiction. *Id.* at 141.

Plaintiffs respond that there is a causal chain between Defendants' emails advertising the Resort and Mr. Mehta's alleged injury. Plaintiffs point out that the emails advertised the spa where Mr. Mehta alleges his injury occurred. (Dkt. 15 at 8.) Mr. Mehta states that he relied on Marriott's and Starwood's brand reputations when deciding to book his stay. (*Id.*) Finally, Plaintiffs contend that Defendants' emails proximately caused Mr. Mehta's injury. (*Id.*)

Mr. Mehta's alleged injury did not arise from or relate to the Defendants' contacts with Illinois such that it confers specific jurisdiction over the Defendants. *Ford* and *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255 (2017), are instructive on this point. In *Ford*, the plaintiffs sued on behalf of their deceased relatives who had perished in car crashes that the plaintiffs alleged resulted from faulty Ford vehicles. Those accidents "occurred in the forum state where [Ford] extensively marketed, sold, and supported repairs of the same model vehicle involved in the accident[s]." *Lishman v. Air & Liquid Sys. Corp.*, 2022 WL 1085163, at *3 (N.D. Ill. Apr. 11, 2022). Explaining that "Ford's 'marketing and advertisements' influenced state residents to 'purchase and drive more Ford vehicles,'" the Supreme Court concluded that the accidents arose from and related to

14

Ford's contacts with the forum states. *Ford*, 592 U.S. at 357 (quoting *Bandemer v. Ford Motor Co.*, 931 N.W.2d 744, 754 (Minn. 2019)).

Contrast *Ford* with *Bristol-Myers Squibb*, a class-action case filed against a pharmaceutical company alleging that one of its drugs caused injuries to the plaintiffs. 582 U.S. at 259–60. The plaintiffs filed in California as the forum state, but most of the plaintiffs were not California residents. *Id.* at 259. Because the "[n]onresidents were not prescribed [the drug] in California, did not purchase [the drug] in California, did not ingest [the drug] in California, and were not injured by [the drug] in California," the Supreme Court held that the California court lacked personal jurisdiction over the defendant for the nonresident plaintiffs' claims. *Id.* at 264–65; *see also Fidrych*, 925 F.3d at 139 ("Marriott's business activity in South Carolina is not insignificant," but "the claims asserted after [the Plaintiff's] injury in a Marriott-affiliated hotel in Milan do not in any sense 'arise out of or relate to' Marriott's connections to the hotels located in South Carolina.").

This case presents facts closer to *Bristol-Myers Squibb* than *Ford* because, unlike the plaintiffs in *Ford*, Mr. Mehta allegedly suffered his injury in a different forum—Mexico—than the location of the suit. Mr. Mehta's circumstances are more like the those of the nonresident plaintiffs in *Bristol-Myers Squibb*, who mostly alleged injuries in a non-forum state. In addition, unlike the plaintiffs in *Ford*, whose injuries were allegedly caused by a Ford vehicle, Mr. Mehta's injuries were not caused by Defendants' emails. *See Ford*, 592 U.S. at 365; (Dkt. 1-1 ¶¶ 26–27, 55–56, 83–84). Defendants emailed Mr. Mehta, but the alleged injury happened during his stay at

the resort while receiving a massage. (*Id.* ¶¶ 13–16.) This chain of causative events is too attenuated for Mr. Mehta to allege that the injury arose from or is related to Defendants' conduct. Mr. Mehta's alleged injury, therefore, did not arise from or relate to Defendants' contacts with Illinois for the purposes of conferring specific jurisdiction.

iii. *Fair Play and Substantial Justice*

Finally, the Court must consider whether the exercise of specific jurisdiction over the defendants would comport with " 'traditional conception[s] of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment." *Rudzewicz*, 471 U.S. at 464 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). That element "does not provide crisp, bright lines for district courts and litigants." *uBID*, 623 F.3d at 433. Rather, it "requires determinations in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable." *Rudzewicz*, 471 U.S. at 486 n.29 (cleaned up). As Supreme Court has explained, there are five factors to consider when analyzing the fairness of exercising jurisdiction: (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) the "shared interest of the several states in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

As to the burden that the exercise of jurisdiction would place on Defendants, it appears burdensome to require Defendants to appear in an Illinois court simply because they sent an email to a subscriber on their email list who happened to live in Illinois. On the other hand, Defendants are international corporations. In *uBID*, the Seventh Circuit reasoned that "[t]he burden of defending a lawsuit in Illinois is minimal for . . . a corporation with a broad enough reach to operate and market its services on a national scale." 623 F.3d at 432. Because Marriott, Starwood, and MVWC are international corporations, facing suit in an Illinois federal court is not unreasonably burdensome.

Also relevant is the interest of Illinois, if any, in the merits of this dispute. In *uBID*, the Seventh Circuit warned that courts must "be mindful of Illinois's significant interest in providing a forum for its residents to seek relief when they suffer harm in Illinois from a harm that occurred at least in part in Illinois." *Id.* And in *Ford*, the Supreme Court focused on the importance of the location of the alleged injury. 592 U.S. at 369–70. Both Manish and Deepa Mehta are Illinois residents, so Illinois has an interest in providing a forum for their relief. (Dkt. 1-1 ¶¶ 1–2.) But Mr. Mehta's alleged injury occurred in Mexico. (*Id.* ¶¶ 13–16.) Balancing the Mehtas' Illinois residency with the alleged injury occurring in Mexico favors neither Plaintiffs nor Defendants.

As to Plaintiffs' interest in obtaining convenient and effective relief, the Mehtas have alleged genuine injuries but have also already obtained some relief in their settlement with Vistana. That factor does not favor one side over the other.

17

Finally, as to the judicial system's interest in obtaining efficient resolutions of controversies,[3] Plaintiffs argue that there is a strong interest in resolving the dispute between American citizens (the Mehtas) and American businesses (Marriott, Starwood, and MVWC) in an American court. But it is questionable whether the judiciary has a strong interest in using its resources to resolve disputes regarding incidents that occurred in foreign countries. That factor likewise favors neither side.

None of these factors suggests that exercising specific jurisdiction over the defendants would violate notions of fair play and substantial justice. But because the first two prongs of specific jurisdiction—that the defendant purposefully availed itself of the forum state and that the incident in question arose from or related to the defendant's contacts with the forum state—are not met, the Court cannot exercise personal jurisdiction over Defendants on specific jurisdiction grounds.

### 2. The Court Lacks General Jurisdiction to Hear the Case

General jurisdiction exists "only where the defendant has 'continuous and systematic general business contacts' with the forum." *Purdue Rsch.*, 338 F.3d at 787 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Those contacts must be "so constant and pervasive as to render [the defendant] essentially at home in the forum State." *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). A corporation is at home in the state where it is incorporated and the state where it has its principal place of business. *Goodyear Dunlop Tires Operations,*

---

[3] As neither Plaintiffs nor Defendants addressed the fifth factor, the Court will not address it.

*S.A. v. Brown*, 564 U.S. 915, 924 (2011). When a moving party contends that the court lacks general jurisdiction over it, the court need only engage in a general jurisdiction analysis if the non-moving party responds to the moving party's contention. *See* Fed. R. Civ. P. Rule 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.")

Defendants argue that the Court lacks general jurisdiction. (Dkt. 10 ¶ 6.) Plaintiffs did not dispute this. (*See generally* Dkt. 15.) According to Rule 8(b)(6), then, Plaintiffs forfeited the point. Accordingly, the Court does not have general jurisdiction over Defendants. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013) ("[F]ailure to deny an allegation constitutes an admission."). Similarly, as Plaintiffs do not allege in the complaint or elsewhere that Defendants are incorporated in or have as their principal place of business Illinois, general jurisdiction does not exist. Because the Court has neither specific nor general jurisdiction over Defendants, it lacks personal jurisdiction over Defendants.

### B.    Plaintiffs' Claims Against MVWC are Time-Barred

Defendant MVWC contends that any claims against it are time-barred. (Dkt. 10 ¶ 9.) Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Relief cannot be granted if the allegations in a complaint show that the applicable statute of limitations has expired and the complaint does not relate back to a timely filed original complaint. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of

limitations, the complaint is subject to dismissal for failure to state a claim."). In Illinois, the statute of limitations for personal injury actions is two years. 735 ILCS 5/13-202.

Although the original complaint did not include MVWC as a Defendant, Plaintiffs' amended complaint attempted to join MVWC to the suit. Rule 15(c) of the Federal Rules of Civil Procedure governs relating a claim that would be otherwise time-barred back to the time of the original filing. Relation back exists to allow a plaintiff recourse against a proper defendant because a party that knows "long before the statute of limitations expires that he is an intended defendant, and who suffers no harm from the failure to have been named as a defendant at the outset[ of litigation], is in the same position as a defendant sued within the statute of limitations." *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 558 (7th Cir. 2011).

An amended complaint that adds a new defendant relates back to the original complaint if four conditions are met. First, the amended complaint must follow the period for summons and complaint that Rule 4(m) provides. Fed. R. Civ. P. 15(c)(1)(C). Second, the amendment must assert "a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* 15(c)(1)(B). Third, the newly added defendant must have had enough notice of the lawsuit such that it would not be prejudiced by being brought in at a later stage. *Id.* 15(c)(1)(C)(i). And fourth, the newly added party must have known or should have known that "but for a mistake concerning the proper party's identity," it

would have been included in the original complaint. *Id.* 15(c)(1)(C)(ii); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("[R]elation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge.").

Defendants argue here that the claim against MVWC should be dismissed under Rule 12(b)(6). Defendants contend that Mr. Mehta's complaint alleges that his injury took place on November 14, 2017, and Plaintiffs added MVWC as a party on February 23, 2021. (Dkt. 11 at 12.) Thus, Defendants argue Plaintiffs' window of time for bringing a claim against MVWC has passed. (*Id.*) Moreover, because MVWC and Marriott are different corporations with different principal places of business, there is no reason to believe that MVWC had notice of the lawsuit. (Dkt. 16 at 15.) Because the statute of limitations has passed and relation back does not apply, Defendants ask the Court to dismiss the claim against MVWC. (*Id.* at 14–15)

Plaintiffs argue that their claim against MVWC relates back to the original complaint. (Dkt. 15 at 15.) Plaintiffs contend that MVWC's officers and attorneys knew of the lawsuit, meaning MVWC would not be prejudiced if added to the lawsuit at this stage. (*Id.*) Moreover, Plaintiffs assert that Defendants "never disclosed nor conveyed that Marriott Vacations Worldwide is a potentially responsible party," and instead "[sat] back and wait[ed] for the limitations period to expire." (*Id.* at 15–16.) Plaintiffs urge the Court not to allow Defendants to benefit from such inaction. (*Id.* at 16.) But MWVC had no reason to believe that, but for a mistake, it would have been added as a party to the lawsuit. As a consequence, adding MVWC at this stage

21

would likely prejudice it, and Plaintiffs' claim against MVWC is time-barred.

This case stands in significant contrast with *Joseph*. In *Joseph*, the plaintiff signed a contract with his employer Elan Inc., but when he went to sue his employer, he sued Elan Corp. 638 F.3d at 557. Elan Inc. and Elan Corp. were "pieces of a dizzying array of corporate entities" and were managed out of the same office. *Id.* at 560. Because the two corporations operated out of the same office and a worker for the proper defendant received the service of complaint, the Seventh Circuit determined that the worker must have known that the plaintiff intended to sue Elan Inc. *Id.* Given that finding, the court decided that if there was any prejudice against the defendant, it was "manufactured by [the] defendant." *Id.*

Unlike the newly added defendant in *Joseph*, MVWC's principal place of business is in Orlando, Florida, whereas Marriott's and Starwood's principal places of business are in Maryland. (Dkt. 1 ¶¶ 10–12.) Moreover, Marriott and MVWC are separate corporations that maintain licensing agreements with each other. (Dkt. 15-1 ¶ 65.) And the emails to Mr. Mehta state that Starwood, a subsidiary of Marriott, licensed Vistana to use the Westin logo, adding another step of removal between MVWC and the lawsuit. (Dkt. 15-2, Exhs. A–C.) Hence, unlike *Joseph*, there is no reason to believe that an employee of MVWC would have even come across the original complaint. Also, unlike the plaintiff in *Joseph*, Manish and Deepa Mehta simply failed to add an additional party in the original complaint.

Because MVWC's operations are several steps removed from the hotel where the alleged injury occurred, the Court finds that MVWC did not have enough notice

that it would be added as a party to the lawsuit. Plaintiffs are also clear in their own complaint on the date of the injury and the date at which they added MVWC—which is later than the two years required by the statute of limitations. (Dkt. 1-1; Dkt. 1-1 ¶¶ 12–16, 41–45, 69–73.) In the alternative, therefore, the motion to dismiss against MVWC for failure to state a claim is granted.

## IV.    CONCLUSION

Defendants' motion to dismiss for lack of specific personal jurisdiction is granted, and the case is dismissed without prejudice. In the alternative, the Court grants Defendant MWVC's motion to dismiss for failure to state a claim.

SO ORDERED in No. 21-cv-01591.

Date: September 30, 2024

_____
JOHN F. KNESS
United States District Judge